IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CRAIG B. WHITAKER, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. DKC-23-0262 |
| DIRECTOR WALT PESTERFIELD, et al., | * | |
| Defendants. | * | |

***

## MEMORANDUM OPINION

Plaintiff Craig B. Whitaker filed an amended complaint as directed by the court. ECF No. 9. He has also filed a supplement to the amended complaint. ECF No. 10. The court will construe both the amended complaint and the supplement as the operative pleadings in this matter.

Plaintiff is a pre-trial detainee housed at the Baltimore County Detention Center ("BCDC"). ECF No. 9 at 2. In plaintiff's initial complaint and supplement to the complaint, he raised a number of claims related to conditions of confinement at BCDC and named one defendant, Gail Watts, the former Warden at BCDC. ECF Nos. 1, 5. Plaintiff provided general conclusory statements that were insufficient to support his claims and he was directed to file an amended complaint for the purpose of clarifying his claims and to name the proper defendants. ECF No. 8.

The court has reviewed the amended complaint and the supplement. ECF Nos. 9, 10. Neither is a model of clarity and Plaintiff again provides many general conclusory statements. In these documents, Plaintiff names 11 defendants and complains about numerous, unrelated matters. *Id.* He states at the onset that he has claims against the "Administration" which he defines as defendants Director Walt Pesterfield; Deputy Director Renard Brooks; Deputy Director Hilary Siaker-Sirleaf; Major D. Greer; Major A. Chiddick; Administrative Captain N. Zahn; Director's

Assistant M. Heinback; and an individual not listed as a defendant in the caption, S. Verch M.A. ECF No. 9 at 6. He also names as defendants Security Sergeant L. Carr, Rec Officer Vasquez, Library Officer Auston,[1] and Sergeant Malloy. ECF No. 9. The court will address each claim.

**Denial of Access to the Court**

In short, plaintiff claims that he is not given physical access to the law library, and states that he is required to make written requests for legal materials to be delivered to him. ECF No. 10 at 5. In particular, he states that he had difficulties accessing the law library from January 2022 through April 2023 to work on three cases in which he is representing himself. ECF No. 9 at 6-7. He also states that he missed a deadline to file an appellate brief in state court, which was due on or before July 13, 2022, presumably in one of these three cases. *Id.* at 7. He further claims that defendants Auston and the "Administration" have failed to "provide a more effective way for Whitaker to do legal research and receive law work in a timely manner" causing cases to be dismissed. ECF No. 9 at 7.

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). However,

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996).

---

[1] Plaintiff alternates his spelling of this defendant between "Auston" and "Austin." The court will use the spelling "Auston," which is how the name is initially presented in the case caption of the amended complaint. ECF No. 9.

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355). "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349. Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id.* at 399.

Plaintiff does not adequately allege how the lack of physical access to the law library resulted in the dismissal of his cases, other than to state that in one case, his library access issues caused a "missing deadline" to file a brief. ECF No. 9 at 7. Although he provides three state court case numbers, he does not state in which case he missed a deadline, or how the lack of physical access to the law library caused him to miss a deadline that affected an ongoing, nonfrivolous, and arguable claim. The claim is conclusory and must be dismissed.

**Housing**

Plaintiff complains generally that he was housed in a cell with two other inmates. ECF No. 9 at 8. He states that when all three inmates complained about the celling, they were "threatened" with tickets for refusing housing and transfer to lock up. *Id.* Plaintiff does not state the name of any defendant or any other individual who made the threat.

This claim may not go forward. Again, plaintiff's general statements are insufficient to state a constitutional claim. He does not state how long he was housed with three inmates in one cell, why it was a problem to be housed with two other inmates, or how he was harmed by the

3

triple celling.  In addition, Plaintiff does not state that anything more than a verbal threat was made.  In general, verbal threats alone are insufficient to state a violation of a constitutional right.  *Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005).  This claim will be dismissed.

**Visitation**

Plaintiff also complains that the visitation policy at BCDC violates his constitutional rights.  He brings this claim against the "Administration" and defendant Carr.  ECF No. 9 at 8; ECF No. 10 at 8.  Plaintiff states that visitation each week is limited to one day for two hours, and contact visits are not allowed.  *Id.*; ECF No. 10 at 8.  Plaintiff also complains that there is a policy of allowing an inmate to visit with only one adult and one child at a time.  ECF No. 9 at 8.  He states that the visitation polices pose a hardship on him and his wife because they have two children and he cannot see both his wife and two children at one time.  *Id.*

Plaintiff's complaints fail to state a constitutional claim pertaining to visitation.  "[A]lthough the Supreme Court has considered issues concerning the visitation rights of prisoners in several cases, no case from that Court or our court [the Fourth Circuit Court of Appeals] clearly establishes a constitutional right to visitation in prison grounded in the First ... or Fourteenth Amendments."  *Desper v. Clarke*, 1 F.4th 236, 243-244 (4th Cir. 2021), *cert. denied*, 142 S. Ct. 811 (2022) (internal quotations omitted) (citing *Williams v. Ozmint*, 716 F.3d 801, 806 (4th Cir. 2013)); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (per curiam) (an inmate "has no constitutional right to physical contact with his family"); *White v. Keller*, 438 F. Supp. 110, 115 (D. Md. 1977) *aff'd*, 588 F.2d 913, 914 (4th Cir. 1978) (there is no constitutional right to prison visitation for prisoners or visitors).  Therefore, Plaintiff fails to state a claim as it pertains to visitation and this claim will be dismissed.

**Religion**

Plaintiff claims that his First Amendment right to practice religion has been violated. He states that he was advised by defendant Carr that BCDC has a policy of not allowing inmates to order prayer rugs, and although he has tried to use bed sheets for the purpose of prayer they are "frequently confiscated during shake downs." ECF No. 9 at 8. Plaintiff further alleges that he has been denied attendance at Jum'ah services because of an administration policy of "keep separate order" on his codefendant. *Id.* at 9. He requests that the "Administration" allow inmates to order prayer rugs. *Id.* at 7.

Plaintiff's religion claim may proceed forward against defendant Pesterfield, the current Director at BCDC, as Plaintiff complains that there is a facility policy that disallows prayer rugs, with no viable alternative, and a policy that does not allow him to attend religious services because he must be separated from a codefendant. This claim will be allowed to proceed as both a First Amendment claim, and a claim under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1 *et seq.*[2] Defendant Pesterfield will be directed to respond to this claim.

**Dirty Blanket and Mat, Inadequate Food, and Recreation**

Finally, Plaintiff complains that when he arrived at BCDC on October 26, 2021, Defendant Officer Vasquez issued him a suicide blanket, towel, and wash cloth that appeared not to have

---

[2] Plaintiff is not required to plead RLUIPA for the court to determine that this statute applies to his claim. A plaintiff is "not required to use any precise or magical words in [his] pleading." *King v. Rubenstein*, 825 F.3d 206, 222 (4th Cir. 2016) (quoting *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 418 (4th Cir. 2014)); *see also Labram v. Havel*, 43 F.3d 918, 920 (4th Cir. 1995) ("Legal labels characterizing a claim cannot, standing alone, determine whether it fails to meet [the standard for notice pleading under Federal Rule of Civil Procedure 8(a)(2)].").

been washed, and an un-sanitized, worn, thin mat.  ECF No. 10 at 7.  The mat caused him to have "full body aches" and sleep deprivation that made it difficult to prepare a defense for his case.  *Id.*

Plaintiff further complains that Carter, and T. Keith, an Aramark Service Director, neither of whom is named as a defendant, use "old dirty trays" for food, the dishwashing equipment does not "meet health standards," and he has suffered from stomach viruses as a result of the germs on the tray.  ECF No. 10 at 7-8.  Further, he has received "hot foods cold" and "cold foods warm." *Id.* at 8.  Finally, since October 20, 2021, the meals are "inadequate both in quality and quantity.  Certain nutritional elements are not provided." *Id.*

Finally, Plaintiff complains generally that since October 26, 2021, "Administration" and their staff has failed to provide adequate "exercise, recreation rehabilitation or any other human resources."  ECF No. 10 at 8.

As Plaintiff was previously advised, generalized claims of poor conditions at BCDC pertaining to food, hygiene, and exercise are not sufficient, and he needs to name particular defendants whom he seeks to hold responsible for violating his constitutional rights.  Further, a plaintiff is required to provide sufficient information to put defendants on notice as to how to respond to a claim.  The test is whether plaintiff has adequately alleged a federal claim that may proceed in this court.

Although Plaintiff was given an opportunity to amend his complaint, and he has done so along with a supplement, he still has not met the standard necessary to state a claim related to bedding, food, or recreation. Simply concluding that food is "unnutritious," or recreation is not "adequate" lacks sufficient detail to state a claim that defendants can respond to in a viable manner. These claims will be dismissed as well.

**Motion to Proceed In Forma Pauperis**

Plaintiff filed two motions to proceed *in forma pauperis*, and, as directed, the Finance Officer at the Baltimore County Detention Center ("BCDC") filed a verified account statement for Plaintiff. ECF Nos. 2, 6, 7. The statement reflects a six-month average account balance of $123.72, average monthly deposits of $190.00, and a current balance of $203.08. ECF No. 7. The motions will be granted, and Plaintiff will be required to pay the sum of $38.00 (20% of $190.00) as the initial partial filing fee.

## CONCLUSION

By separate Order that follows, Plaintiff's claims of denial of religious materials and congregate services may proceed against defendant Pesterfield under both the First Amendment and RLUIPA. Plaintiff's other claims will be dismissed. Plaintiff's motions to proceed *in forma pauperis* will be granted.

August 23, 2023                              _____/s/_____
                                             DEBORAH K. CHASANOW
                                             United States District Judge